# Legislation Authorizing the Transfer of Federal Judges from One District to Another

Congress may by statute confer new duties on officers of the United States as long as those new duties are "germane" to their existing functions, without the necessity of reappointment under the Appointments Clause of the Constitution. *Shoemaker* v. *United States*, 147 U.S. 282, 301 (1893).

Constitutionality of legislation authorizing the transfer of a Federal district judge from one district to another depends upon whether the transfer is viewed as the modification of an existing position or the filling of an entirely new office.

Transfer provision goes against a tradition of regionalism in the selection of district judges, and potentially infringes upon the President's power to appoint judges to the District of Columbia bench, and should be opposed on policy grounds even if not clearly forbidden by the Appointments Clause.

March 28, 1980

## MEMORANDUM OPINION FOR THE ASSISTANT ATTORNEY GENERAL, OFFICE OF LEGISLATIVE AFFAIRS

This responds to your request for our opinion on the constitutionality of certain provisions of S. 1477* dealing with the temporary assignment of federal judges to administrative positions within the judicial branch. In particular, you requested our opinion regarding the constitutionality of a provision in § 304(a) of the bill that would permit a judge in active service at the time he assumed the administrative position to elect, upon vacating it, either to return to active service in his home district (or circuit), or to "assume active service as a judge in the circuit of the District of Columbia." For the reasons set forth below, we believe this provision raises novel and troublesome constitutional questions and, as a matter of policy, is ill-advised.

The portions of S. 1477 preceding § 304 would authorize federal judges to serve in certain specified administrative positions within the judiciary (§ 301),[1] authorize the President to appoint successors to fill

---

*NOTE: S. 1477, a bill "To Provide for Improvements in the Structure and Administration of the Federal Courts, and for Other Purposes," passed the Senate in October of 1979, but was not reported out of committee in the House. Ed.

[1] The specified statutory administrative positions are: Administrative Assistant to the Chief Justice (appointed by the Chief Justice pursuant to 28 U.S.C. § 677), Director of the Administrative Office of the United States Courts (appointed by the Supreme Court under 28 U.S.C. § 601), and Director of the Federal Judicial Center (appointed by a board of judges chaired by the Chief Justice, pursuant to 28 U.S.C. §§ 621(a) and 624(1)).

vacancies on the bench resulting from such service (§ 302),[2] and establish the District of Columbia as the "official duty station" of the judge-administrators (§ 303). There is no minimum or maximum time specified for terms of service as a judicial administrator.

If a judge elects to return to his home court at the end of his tour of administrative duty, he may do so without loss of seniority. § 304(b). If he elects the alternative "transfer" option, however, and assumes a seat on a federal court in the District of Columbia, his status is not so clear. It is, for example, not clear whether he would be considered to have filled a vacancy on the District of Columbia court, or whether there would automatically be created an additional seat on that court. It is not stated whether a judge who decides to remain in the District of Columbia could subsequently reclaim a seat on his home court—or whether his initial decision not to return to that court would mean relinquishing that option. Finally, as your Office's memorandum points out, the bill is unclear as to whether a district court judge could, through the provision, "elevate himself" to the court of appeals.[3]

Stated in its simplest terms, the constitutional question raised by the transfer provision is whether a new presidential nomination, confirmation by the Senate, and appointment by the President are constitutionally required before a judge appointed to, for example, the Northern District of Iowa, may take a seat as a judge on the District Court for the District of Columbia. This question may be analyzed in terms of the relationship between the power of Congress under Art. I, § 8, cl. 18 of the Constitution to alter, enlarge, or restrict the functions of existing federal officers and the requirement of the Appointments Clause, Art. II, § 2, cl. 2, that appointments as officers of the United States be made in the manner prescribed in that Clause.[4] Such an analysis involves a

---

[2] When a successor is appointed, any vacancy resulting from the death, resignation or retirement of the judge temporarily assigned will not be filled; and, if the judge resumes active service in his home district, the first vacancy created on that court shall not be filled. This scheme parallels that provided under present law for situations in which a sitting judge is certified as disabled and an additional judge is appointed to carry on the business of the court. See 28 U.S.C. § 372(b).

[3] The complete failure to spell out these important operational factors in the bill has not to date been cured in its legislative history. Indeed, there is no indication that the transfer provision was even noticed, much less discussed, by anyone during the bill's consideration in the Senate. The Administration's court improvements bill contained no provisions dealing with administrative service by active judges. According to an article in The Washington Post on December 22, 1979, credit for developing the particular provision dealing with transfer to the District of Columbia courts is claimed by the Director of the Federal Judicial Center. Its' ostensible purpose was to encourage sitting judges to accept the administrative posts and relocate to Washington.

[4] The clause is:

> [The President] shall have Power, by and with the Advice and Consent of the Senate, to make Treaties, provided two thirds of the Senators present concur; and he shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law; but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

reconciliation of the Supreme Court's decisions in *Shoemaker* v. *United States,* 147 U.S. 282, 301 (1893), and *Buckley* v. *Valeo,* 424 U.S. 1, 118–36 (1976).

*Shoemaker* stated the principle that Congress may, by statute, confer new duties on officers of the United States at least where the new duties are "germane" to their existing functions, without the necessity of reappointment under the Appointments Clause. *Buckley* held that Congress may not itself appoint officers of the United States. The propriety of the proposed transfer provision depends, therefore, on whether the shift from one district to another involves the modification of an existing position or the filling of an entirely new office.[5]

There are reasonable arguments to support either conclusion, and precedent does not suggest that one is necessarily the correct view. On the one hand, a judge's commission includes the name of the district or circuit in which he is intended to serve, and his appointment and confirmation are predicated on the expectation that he will in fact be serving in that district or circuit.[6] On the other hand, service as a judge on one federal court is surely "germane" to judicial service on another, and raises none of the type of separation of powers problems that apparently structured the Court's opinion in *Shoemaker.*[7] Under current law, the Chief Justice of the United States may assign any district judge to temporary service in another circuit, either on a district court or on the court of appeals. 28 U.S.C. § 292(d). However, during such temporary service, judges retain the titles appurtenant to their permanent appointments, and are generally memorialized in published opinions as "sitting by designation" on the court to which they have been temporarily assigned.[8]

---

[5] The question whether Congress may permit a district judge, through the proposed transfer provision, to elevate himself to the appellate level seems to us to present no separate constitutional issues. Article III recognizes only two types of federal courts, the Supreme Court and "such inferior Courts as the Congress may from time to time ordain and establish." The offices of district judge and circuit judge are therefore not constitutionally distinct. Indeed, in the early years of our history, there were no judges separately appointed to the circuit courts, and district judges regularly sat as judges on those courts along with Justices of the Supreme Court. It was not until 1869 that Congress authorized the appointment of circuit judges. Act of April 10, 1869, 16 Stat. 44. *See* Hart & Wechsler, The Federal Courts and the Federal System 38 (1973). If there is no constitutional bar to Congress' transferring district judges from district to district, we think there would be no constitutional bar to their being shifted from district to appellate court service.

[6] There is nothing in the Constitution that would preclude Congress from deciding to make all district and/or circuit judgeships interchangeable, so that an appointment would be generally valid for any post in the inferior federal courts to which an individual might from time to time be assigned. There have in the past been cases in which Congress has authorized the appointment of a judge to serve in more than one district, or to serve as a "roving" judge among several districts. *See, e.g.,* Act of July 24, 1946, 60 Stat. 654. There have been cases in which a judge appointed to serve in one district was subsequently shifted by congressional act to a newly created district in the same state, without being reappointed and reconfirmed. In no case, however, has a judge been appointed to one court and subsequently been permitted to shift permanently to another previously existing court.

[7] In commenting on the *Shoemaker* case, in which officers of the United States Army were designated by Congress to serve as Park Commissioners, Corwin describes the limits of Congress' power to increase or change the duties of an existing office in terms of the principle of separation of powers. Corwin, The President, Office and Powers, 1787–1957 at 75 (1957).

[8] A similar provision dealing with the temporary assignment of judges of the Court of Claims or the Court of Customs and Patent Appeals to judicial duties in either a district court or a court of appeals,

Continued

540

While we cannot conclude with assurance on the question of the transfer provision's constitutionality, we think that two considerations warrant the Administration's opposition to its inclusion in the court improvements bill. First, the transfer option is unique in the history of congressional regulation of the inferior federal courts, and would go against a tradition of regionalism in the selection of district judges that, if not constitutionally required, has about it an aura of constitutional respectability that should be disturbed only for compelling reasons. Second, the inroads that the transfer provision could theoretically make on the President's power to appoint judges to the District of Columbia bench make its adoption unwise as a matter of policy, even if not clearly forbidden under the Appointments Clause.

This conclusion is consistent with our recent advice on the reallocation of personnel in connection with the proposed merger of the Court of Claims and the Court of Customs and Patent Appeals. We advised that there appeared to be no constitutional objection to Congress' redesignating judges presently serving on one or the other of the two courts as judges of a merged court, and to carrying over trial judges of the Court of Claims as judges of a new United States Claims Court. We rested our opinion on our understanding that the functions of judges on the new court were sufficiently like those in the positions being abolished to view the legislative redesignation as a modification of an existing position under *Shoemaker*, rather than a legislative appointment to a new one, governed by *Buckley*. One important difference between the merger situation and the transfer proposal at issue here is that the former involves the end of one institution and the continuance of its major functions in another. It is reasonable, and important in terms of efficiency and institutional continuity, to provide in this context for the relocation of experienced and capable judicial personnel, and for their continuing to perform the functions of the office to which they were originally appointed. In addition, unlike the transfer provision, it could be said that the judges' functions on the merged court were within the contemplation of those who were in the first place responsible for their appointment and confirmation.

Although we have no reason to believe that the dire predictions of "court-packing" that have been made in connection with the transfer proposal [9] would ever be realized, we can more easily imagine a situation in which the President's prerogative to fill vacancies occurring on the District of Columbia bench would be seriously compromised by it. This would be particularly true if transferring judges were considered

---

28 U.S.C. § 293(a), was upheld against a constitutional challenge in *Glidden Co.* v. *Zdanok*, 370 U.S. 530 (1962). *Glidden* involved primarily questions under Article III, and there is no discussion in the Court's opinion of the Appointments Clause.

[9] *See, e.g., Bill Would Let Chief Justice Fill U.S. Bench Here*, The Washington Post, December 22, 1979, p. 1.

to have filled a vacancy on the District of Columbia court. Quite independently of any constitutional doubts we may have regarding the proposal, then, we believe it has little to commend it as a matter of policy.

LARRY L. SIMMS
*Deputy Assistant Attorney General*
*Office of Legal Counsel*
